# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| S.C. AND B.C., INDIVIDUALLY AND AS NEXT FRIENDS TO C.C., A MINOR CHILD,<br>*Plaintiffs*<br><br>v.<br><br>ROUND ROCK INDEPENDENT SCHOOL DISTRICT, THERESA PROCTOR, INDIVIUALLY, AND JOSEPH GRUBBS, INDVIDUALLY,<br>*Defendants* | Case No. A-19-CV-1177-SH |

## ORDER

Before this Court are Defendant Theresa Proctor's Motion to Dismiss, filed December 23, 2019 (Dkt. No. 8); Plaintiffs' Response, filed January 8, 2020 (Dkt. No. 11); Proctor's Reply, filed January 15, 2020 (Dkt. No. 12); and Plaintiffs' Sur-Reply, filed January 24, 2020 (Dkt. No. 13). On March 11, 2020, District Court transferred this case to the undersigned Magistrate Judge for all proceedings and the entry of final judgment pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas. *See* Dkt. No. 21.

## I. BACKGROUND

S.C. and B.C., individually and on behalf of their minor daughter, C.C. (collectively, "Plaintiffs"), bring this disability discrimination lawsuit against Round Rock Independent School District ("RRISD") and individual defendants Theresa Proctor and Joe Grubbs. In the Amended Complaint ("Complaint," Dkt. No. 4), Plaintiffs make the following allegations.

In 2016, C.C. enrolled as a student at Cedar Valley Middle School in RRISD. That same year, C.C. was diagnosed with and treated for Anorexia Nervosa, "a mental disorder manifested by

1

extreme fear of becoming obese and an aversion to food, usually occurring in young women and often resulting in life-threatening weight loss, accompanied by a disturbance in body image, hyperactivity, and amenorrhea." STEDMANS MEDICAL DICTIONARY 44880 (West 2014). On January 10, 2017, RRISD determined that C.C. was entitled to receive certain accommodations on account of her Anorexia Nervosa pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Exh. B to Dkt. No. 4 at p. 26. Accordingly, RRISD developed a Section 504 Individual Accommodation Plan for C.C. (the "504 Plan") which provided her accommodations while she was at school, such as having "supervised meals." Dkt. No. 4 at ¶ 15.[1]

In Fall 2018, C.C. transitioned to McNeil High School. Plaintiffs allege that "the 504 Plan did not follow her in any meaningful fashion." *Id.* Plaintiffs contend that the Assistant Principal of McNeil High School, Joe Grubbs, failed to implement or delegate implementation of the 504 Plan and, "as later events made clear, he had not even read the plan until C.C. was in full crisis." *Id.* Plaintiffs also allege that Theresa Proctor ("Proctor"), C.C.'s journalism teacher and a member of C.C.'s Section 504 Committee, "recruited C.C. into the journalism department" because she "had a plan to exploit C.C.'s health condition." *Id.* at ¶ 17-18. Specifically, Plaintiffs allege that Proctor:

> intended to make C.C. the subject of a feature article in the high school yearbook concerning mental illness. She assigned upper class students to interview and photograph [C.C.] with a view to developing the article.
>
> As a 16-year old child, C.C. was legally incapable of giving consent to the interviews and photographs. Neither of her parents were contacted by any school official or faculty member to gain consent.
>
> Submitting to the peer and faculty pressure, C.C. participated in the interviews and allowed photographs to be taken in late October or early November 2018. Not surprisingly, the photographs and gossipy rumors of [C.C.]'s condition soon began appearing on internet social media such as Facebook and Instagram.

*Id.* ¶ at 18-20.

---

[1] Plaintiffs failed to attach C.C.'s initial 2017 Section 504 Plan to the Complaint. Instead, Plaintiffs have submitted a subsequent Section 504 Plan issued in January 2018. *See* Exh. B to Dkt. No. 4 at p. 27-28.

2

Plaintiffs allege that because of the yearbook story, photographs, interviews, and ensuing gossip, C.C. stopped eating and "went into a psychic and physical tailspin." *Id.* at ¶ 25. Plaintiffs allege that C.C. lost 43 pounds between October 24, 2018 and January 30, 2019, and dropped to a weight of 119 pounds.[2] Due to her significant weight loss, on January 30, 2019, C.C.'s parents admitted her to an inpatient eating disorder treatment program in Tulsa, Oklahoma. When C.C. was admitted to the treatment facility, she reported to staff at the facility that "she started obsessing with her body after the yearbook interview and photographs." *Id.* at ¶ 26. During the next several months, C.C. made some progress, but also struggled in the treatment program. On April 25, 2019, C.C. was discharged from the facility because her parents could no longer afford to pay for the costly treatment.[3] In late April 2019, C.C. returned to McNeil High School, where she "was subjected to a hostile environment." *Id.* at ¶ 42. Plaintiffs aver that the hostile environment "stemmed from gossip and rumors" that Proctor had been terminated because C.C.'s family was "suing the school." *Id.*

On December 2, 2019, Plaintiffs filed this lawsuit against RRISD, Proctor, and Grubbs ("Defendants"), alleging claims under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and the Fourteenth Amendment's equal protection and due process clauses.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light

---

[2] C.C. is five feet ten inches tall.

[3] C.C.'s parents spent $162,033.93 on medical expenses for C.C.'s treatment between January and April 2019. Exh. A to Dkt. No. 4 at p. 21.

3

most favorable to the [nonmovant].” *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. ANALYSIS

Plaintiffs allege claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA" or "Section 504"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"); and the Fourteenth Amendment's equal protection and due process clauses "pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 1983)." Dkt. No. 4 at ¶ 1. Proctor argues that Plaintiffs' Section 504 and ADA claims should be dismissed under Federal Rules of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies. Proctor also argues that

Plaintiffs' Fourteenth Amendment claims should be dismissed under Rule 12(b)(6) for failure to state a plausible cause of action.

### A. Proctor's Rule 12(b)(1) Motion to Dismiss

Proctor argues that Plaintiffs' claims under Section 504 and Title II of the ADA should be dismissed for lack of subject-matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies. Proctor's jurisdictional argument is misplaced.

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Courts apply the same analysis to claims under Section 504 and Title II of the ADA. *See Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) ("The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."); *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (stating that the language in the ADA generally tracks the language set forth in the RA and jurisprudence interpreting either section is applicable to both).

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may exercise only jurisdiction expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to

adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

As the Supreme Court has emphasized, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Thus, administrative exhaustion rules "may be mandatory without being jurisdictional." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1852 (2019); *see also Williams v. J.B. Hunt Transport, Inc.*, 826 F.3d 806, 810 (5th Cir. 2016) (stating that "not all administrative requirements are jurisdictional").

While the Fifth Circuit has not specifically ruled on whether exhaustion of administrative remedies under Section 504 is jurisdictional, it has suggested that it is not. *See Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992) ("We do not decide whether exhaustion is a jurisdictional requirement. Quite arguably, it is not because there is a judicial exception to exhaustion when exhaustion would be futile or inadequate."). The Fifth Circuit and the Supreme Court, moreover, have recently addressed other statutes (including the ADA) with similar exhaustion requirements and have concluded that such requirements are not jurisdictional. *See Fort Bend*, 139 S. Ct. at 1851 (holding that Title VII's administrative exhaustion requirement is "not a jurisdictional prescription delineating the adjudicatory authority of courts"); *Williams*, 826 F.3d at 810 (holding that exhaustion requirement under the ADA was not jurisdictional). In addition, district courts in this Circuit have held that exhaustion under Section 504 is not a jurisdictional requirement. *See, e.g.*, *E.A. b/n/f Edward A. v. Frisco Indep. Sch. Dist.*, 2019 WL 5721764, at *4 (E.D. Tex. Nov. 5, 2019) (rejecting defendant's argument that failure to exhaust administrative remedies under Section 504 deprived the court of subject-matter jurisdiction).

6

Based on the foregoing, the Court finds that exhaustion of administrative remedies under the Rehabilitation Act and ADA is not a jurisdictional requirement; rather, "it is only a precondition to filing suit, subject to waiver or estoppel defenses." *Stroy v. Gibson on behalf of Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018).

Accordingly, Proctor's Motion to Dismiss under Rule 12(b)(1) for lack of jurisdiction based on failure to exhaust is **DENIED**. The Court will consider Proctor's exhaustion arguments under Rule 12(b)(6). *See Scott v. Navarro Coll. Dist.*, 2018 WL 3820149, at *2 (N.D. Tex. Aug. 10, 2018) ("In the Fifth Circuit, failing to exhaust administrative remedies under Title VII results in the court's dismissal pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.").

### B. Exhaustion under Section 504 and the ADA

On July 19, 2019, before filing this lawsuit, Plaintiffs filed with the United States Department of Education's Office of Civil Rights (the "OCR") an administrative complaint raising the same claims as this lawsuit. Exh. B. to Dkt. No. 4. Plaintiffs contend that the OCR dismissed the administrative complaint as untimely. Plaintiffs did not appeal the OCR's ruling or request an administrative hearing before filing suit.

Proctor argues that Plaintiffs were required to exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(l), before filing suit. Proctor contends that Plaintiffs failed to do so because the OCR never issued a final decision in their case, and because they failed to file an administrative appeal. Thus, Proctor argues, Plaintiffs' claims under Section 504 and Title II of the ADA should be dismissed for failure to exhaust. In response, Plaintiffs contend that they properly exhausted their administrative remedies by filing the administrative complaint with the OCR.

Before determining whether Plaintiffs' action was sufficient for exhaustion, the Court must first determine whether Plaintiffs were required to exhaust their administrative remedies under the IDEA before filing suit. "The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) (quoting 20 U.S.C. § 1412(a)(1)(A)). Under the IDEA, a group of school officials, teachers, and parents develop an "individualized education program," called an IEP, which serves as the "primary vehicle" for providing each child with the promised FAPE. *Id.* at 749.

"Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes." *Id.* These administrative procedures include: (1) the opportunity for any party to file a complaint, which forces a local education agency to hold a preliminary meeting to resolve the complaint, 20 U.S.C. § 1415(b)(6), (f)(1)(B)(i); (2) an impartial "due process hearing" to resolve the complaint, which a local or state education agency conducts, *id.* § 1415(f); and (3) mediation to resolve the complaint, at the state's expense. *Id.* § 1415(e)(1), (e)(2)(D). After exhausting these administrative remedies, a party not satisfied with the result of the administrative process may bring an IDEA claim in federal court. *Id.* § 1415(i)(2).

Other federal statutes also protect the interests of children with disabilities, including Section 504 and Title II of the ADA. *Fry*, 137 S. Ct. at 749. In *Smith v. Robinson*, 468 U.S. 992, 1009 (1984), the Supreme Court first considered the interaction between such laws and the IDEA. In *Smith*, the plaintiffs brought claims alleging that they were denied a FAPE under the IDEA, Section 504, and the Fourteenth Amendment. The Supreme Court held that the IDEA was "the exclusive avenue" for enforcing a disabled student's right to an adequate education. *Id.* Thus, a

plaintiff seeking educational accommodations for a disabled student could not sue under other laws that protect the disabled, such as the Rehabilitation Act or the ADA. *Id.*

Congress quickly responded by passing the Handicapped Children's Protection Act of 1986, overturning *Smith's* preclusion of non-IDEA claims and adding an exhaustion provision. *Fry*, 137 S. Ct. at 750. Under that provision, a plaintiff bringing suit under the ADA, Section 504, or similar laws "seeking relief that is also available" under the IDEA must first exhaust the IDEA's administrative remedies. *Id.* The exhaustion provision reads in full:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

In *Fry*, the Supreme Court clarified when § 1415(l) requires a plaintiff to exhaust claims under statutes other than the IDEA. 137 S. Ct. at 752. The *Fry* Court first held that to meet the statutory standard, "a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* As the Court explained:

> § 1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs in *Smith* claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required. After all, the plaintiff could not get any relief from those procedures: A hearing officer, as just explained, would have to send her away empty-handed. And that is true even when the suit

9

> arises directly from a school's treatment of a child with a disability—and so could be said to relate in some way to her education. A school's conduct toward such a child—say, some refusal to make an accommodation—might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(l)'s exhaustion rule because, once again, the only "relief" the IDEA makes "available" is relief for the denial of a FAPE.

*Id.* at 754-55.

The *Fry* Court next ruled that to determine whether a suit seeks relief for the denial of a FAPE, "a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752.

> That inquiry makes central the plaintiff's own claims, as § 1415(l) explicitly requires. The statutory language asks whether a lawsuit in fact "seeks" relief available under the IDEA—not, as a stricter exhaustion statute might, whether the suit "could have sought" relief available under the IDEA (or, what is much the same, whether any remedies "are" available under that law). . . . A court deciding whether § 1415(l) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education. But that examination should consider substance, not surface. The use or (non-use) of particular labels and terms is not what matters.

*Id.* at 755. In sum, Section 1415(l) "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.*

In determining whether a complaint fits that description, courts should also look to the purpose of the statute at issue. The *Fry* Court noted that the IDEA protects only children and adolescents, and its goal is to provide each child with meaningful access to education by offering individualized instruction and related services. In contrast, Section 504 and Title II of the ADA cover people with disabilities of all ages, inside and outside of school, and "aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable

accommodations) to participate equally to all others in public facilities and federally funded programs." *Id.* at 756. "In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Id.*

The *Fry* Court further stated that it may be helpful to ask a pair of hypothetical questions to determine whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756.

Applying the *Fry* analysis, the Court finds that the gravamen of Plaintiffs' Complaint seeks relief for disability discrimination, not for denial of a FAPE. Although Plaintiffs' Complaint includes allegations that Defendants failed to follow the 504 Plan by failing to supervise her meals, the substance of the Complaint focuses on allegations that Proctor singled out and exploited C.C. because of her disability by taking photographs of her and featuring her in an article on mental illness in the yearbook. The only allegation related to C.C.'s 504 Plan is that Grubbs failed to read it and failed to ensure that C.C.'s meals were supervised. As the Supreme Court's analysis in *Fry* shows, however, the inquiry is not whether a FAPE is potentially implicated; it is whether the "gravamen" or "essentials" of the complaint concern the denial of a FAPE. *Id.* at 755. Even though the "same conduct might violate" the IDEA and other statutes and could give rise to an IDEA

11

claim, a plaintiff "might instead seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation." *Id.* at 756.

In the instant case, the substance of Plaintiffs' Complaint largely focuses on C.C.'s Anorexia Nervosa and the Defendants' alleged discrimination based on that disability. Thus, the gravamen of Plaintiffs' Complaint is not focused on the denial of the 504 Plan, but rather on Title II and Section 504's promise of "non-discriminatory access to public institutions." *Id.* Here, Plaintiffs' claims focus on "simple discrimination, irrespective of the IDEA's FAPE obligation." *Id.* Plaintiffs' Complaint concerns "the denial of a nondiscriminatory environment to which all students are entitled." *Doe v. Dallas Indep. Sch. Dist.*, 941 F.3d 224, 228 (5th Cir. 2019).

Accordingly, the Court concludes that the gravamen of the Complaint is not the denial of a 504 Plan, but disability discrimination. The IDEA's exhaustion requirement therefore does not apply in this case. *See id.* at 228-29 (holding that IDEA's exhaustion requirements did not apply to Title IX lawsuit where the substance of plaintiff's complaint was focused on sex-based discrimination and sexual harassment, not the denial a FAPE); *see also Fry*, 137 S. Ct. at 758-59 (reversing Sixth Circuit's holding that IDEA's exhaustion requirements applied to case brought under ADA and Section 504 where the complaint alleged only disability-based discrimination). Based on the foregoing, Proctor's Motion to Dismiss on the basis of failure to exhaust administrative remedies is **DENIED**.

### C. Plaintiffs' Claims under Section 504 and Title II of the ADA

Although Plaintiffs' claims under Section 504 and Title II of the ADA are not barred for failure to exhaust, those claims nevertheless fail. As a matter of law, Section 504 and Title II of the ADA do not allow Plaintiffs to hold individual defendants personally liable for alleged violations. *See Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) ("We note that the ADA cannot be assessed

against an individual."); *Hay v. Thaler*, 470 F. App'x 411, 417 (5th Cir. 2012) (affirming dismissal of ADA and Rehabilitation Act claims against defendants in their individual capacities); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (holding that government officials cannot be sued in their individual capacities under Section 504); *Burns v. E. Baton Rouge Par. Prison Emergency Med. Servs.*, 2016 WL 1122242, at *5 (M.D. La. Mar. 4, 2016), *report and recommendation adopted*, 2016 WL 1189335 (M.D. La. Mar. 22, 2016) ("[b]ecause the term 'public entity' in Title II does not include individuals, individual defendants cannot be held personally liable for violations of Title II of the ADA"); *Tristan v. Socorro Indep. Sch. Dist.*, 902 F. Supp. 2d 870, 875 (W.D. Tex. 2012) ("Neither the IDEA nor Section 504, however, provides a cause of action against a school official sued in his individual capacity."). Accordingly, Plaintiffs' claims under the Rehabilitation Act and Title II of ADA fails to state a claim.

**D. Plaintiffs' Claims under Title VII**

In their third claim for relief, Plaintiffs "also make claims for damages and statutory relief, including attorney fees pursuant to the due process and equal protection clauses of the 5th Amendment applied to the states through [sic]14th Amendment, and assert their private rights of action pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 1983)." Dkt. No. 4 at ¶ 54. In response to Proctor's Motion to Dismiss—which addressed why any potential claim under Title VII, Title VI[4] and 42 U.S.C. § 1983 should be dismissed—Plaintiffs continue to assert a claim only under Title VII. *See* Dkt. No. 11 at p. 1. By its terms, Title VII applies only in the employment context. *See Lewis v. Baton Rouge Police Dep't*, 2015 WL 300417, at *7

---

[4] Any potential claim under Title VI of the Civil Rights Act would fail because Title VI prohibits discrimination only on the basis of "race, color or national origin," not disability. 42 U.S.C. § 2000d. Because Plaintiffs' Complaint relies solely on disability discrimination, Title VI is not applicable. *See Clinton v. Dallas Indep. Sch. Dist.*, 2019 WL 1411474, at *5 (N.D. Tex. Mar. 27, 2019) (finding that Title VI did not apply to plaintiff's claims where plaintiff alleged only disability discrimination).

(M.D. La. Jan. 22, 2015); *see also Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984) ("Once a contractual relationship of employment is established, the provisions of Title VII attach and govern certain aspects of that relationship."). Because there is no employer-employee relationship between the Plaintiffs and Proctor, Plaintiffs have failed to state a claim under Title VII.

## E. 42 U.S.C. § 1983

In their Complaint, Plaintiffs alleged a due process and equal protection claim under the Fourteenth Amendment, invoked Title VII, and mentioned 42 U.S.C. § 1983 in parenthesis. *See* Dkt. No. 4 at ¶ 54. In response, Proctor moved to dismiss Plaintiffs' claims under § 1983 because (1) Plaintiffs are attempting to bring Section 504 and ADA disability claims under § 1983;[5] (2) Plaintiffs failed to allege a due process or equal protection violation; (3) Plaintiffs failed to show that Proctor was acting under color of law; and (4) Proctor is entitled to qualified immunity.

Plaintiffs fail to respond to any of these arguments. Plaintiffs have abandoned their § 1983 claim by failing to address that statute in their Response and citing Title VII again. *See Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (stating that plaintiff abandoned her claim because she failed to defend it in her response to the defendant's motion to dismiss and failed to pursue the claim beyond her complaint)); *Clinton*, 2019 WL 1411474, at *5 (holding that plaintiff abandoned his Title VI claim where he failed to mention Title VI in his response).

Even if Plaintiffs had not abandoned their § 1983 claims, they still would be subject to dismissal. As noted, Proctor raised the defense of qualified immunity in this case. "Qualified

---

[5] The Fifth Circuit has held that violations of the ADA and Section 504 cannot be enforced under § 1983 because Congress has created a "specific comprehensive internal enforcement mechanism to protect the rights of the disabled" in the ADA and the Rehabilitation Act. *Lollar*, 196 F.3d at 609-10; *see also Doe v. Lori Louise Lambropoulos*, 2019 WL 3216547, at *5 (S.D. Tex. July 17, 2019) ("[A]s a matter of law, a plaintiff cannot bring a § 1983 claim alleging a Section 504 violation.").

14

immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Petzold v. Rostollan*, 946 F.3d 242, 255 (5th Cir. 2019). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). To rebut the qualified immunity defense, a plaintiff must show two things: (1) the allegations make out a violation, and (2) the violation was "clearly established" at the time of the defendant's conduct. *Id.* "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

In failing to respond to Proctor's grounds for dismissal of the § 1983 claims based on qualified immunity, Plaintiffs have failed to meet their burden to negate Proctor's qualified immunity defense. *See Colin v. Fort Worth Indep. Sch. Dist.*, 2018 WL 4078272, at *3 (N.D. Tex. Aug. 27, 2018) ("Plaintiffs, in failing to respond to Scott's grounds for dismissal of the § 1983 claims asserted against him, have both abandoned the claim and failed to meet their burden to negate Scott's defense concerning whether Scott is entitled to qualified immunity."). Accordingly, Plaintiffs have failed to state a viable § 1983 claim against Proctor.

## IV. CONCLUSION

Based on the foregoing, Theresa Proctor's Motion to Dismiss (Dkt. No. 8) is **GRANTED IN PART AND DENIED IN PART**. The Court **DENIES** the Motion to Dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) but **GRANTS** the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Accordingly, the Court **HEREBY DISMISSES** Defendant Theresa Proctor from this lawsuit. Plaintiffs' claims against Defendants RRISD and Joseph Grubbs remain pending.

**SIGNED** March 25, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE