# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| S.C. AND B.C., INDIVIDUALLY AND AS NEXT FRIENDS TO C.C., A MINOR CHILD, §§§§§§§§§§§ *Plaintiffs* <br><br> v. <br><br> ROUND ROCK INDEPENDENT SCHOOL DISTRICT AND JOSEPH GRUBBS, INDVIDUALLY, <br> *Defendants* | Case No. A-19-CV-1177-SH |

## **O R D E R**

Before the Court are Defendant Round Rock Independent School District's ("RRISD") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, filed April 15, 2020 (Dkt. 28); Plaintiffs' Response, filed May 14, 2020 (Dkt. 30); RRISD's Reply, filed May 19, 2020 (Dkt. 32); RRISD's Supplemental Motion to Dismiss, filed July 8, 2020 (Dkt. 36); Plaintiffs' Response to Supplementary Motion to Dismiss, filed August 21, 2020 (Dkt. 42); and Plaintiffs' Opposed Motion for Leave of Court to File the Third Amended Complaint, filed September 3, 2020 (Dkt. 46). On March 11, 2020, District Court transferred this case to the undersigned Magistrate Judge for all proceedings and the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 21.

### I.   Background

S.C. and B.C., individually and on behalf of their minor daughter, C.C. (collectively, "Plaintiffs"), filed this disability discrimination lawsuit against RRISD and individual defendants Theresa Proctor and Joe Grubbs. Plaintiffs make the following allegations.

1

In 2016, C.C. enrolled as a student at Cedar Valley Middle School in RRISD. The same year, C.C. was diagnosed with and treated for Anorexia Nervosa, "a mental disorder manifested by extreme fear of becoming obese and an aversion to food, usually occurring in young women and often resulting in life-threatening weight loss, accompanied by a disturbance in body image, hyperactivity, and amenorrhea." STEDMANS MEDICAL DICTIONARY 44880 (West 2014). On January 10, 2017, RRISD determined that C.C. was entitled to receive certain accommodations for her eating disorder, pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Exh. B to Dkt. 4 at 26. Accordingly, RRISD developed a Section 504 Individual Accommodation Plan for C.C. (the "504 Plan") which provided her accommodations while she was at school, such as having "supervised meals." Dkt. 4 at ¶ 15.[1]

In Fall 2018, C.C. transitioned to McNeil High School. Plaintiffs allege that "the 504 Plan did not follow her in any meaningful fashion." *Id.* Plaintiffs contend that the Assistant Principal of McNeil High School, Joe Grubbs, failed to implement or delegate implementation of the 504 Plan and, "as later events made clear, he had not even read the plan until C.C. was in full crisis." *Id.* Plaintiffs also allege that Theresa Proctor, C.C.'s journalism teacher and a member of C.C.'s Section 504 Committee, "recruited C.C. into the journalism department" because she "had a plan to exploit C.C.'s health condition." *Id.* at ¶¶ 17-18. Specifically, Plaintiffs allege that Proctor:

> intended to make C.C. the subject of a feature article in the high school yearbook concerning mental illness. She assigned upper class students to interview and photograph [C.C.] with a view to developing the article.
>
> As a 16-year old child, C.C. was legally incapable of giving consent to the interviews and photographs. Neither of her parents were contacted by any school official or faculty member to gain consent.
>
> Submitting to the peer and faculty pressure, C.C. participated in the interviews and allowed photographs to be taken in late October or

---

[1] Plaintiffs failed to attach C.C.'s initial 2017 Section 504 Plan to the Complaint. Instead, Plaintiffs have submitted a subsequent Section 504 Plan, issued in January 2018. *See* Exh. B to Dkt. 4 at 27-28.

2

> early November 2018. Not surprisingly, the photographs and gossipy rumors of [C.C.]'s condition soon began appearing on internet social media such as Facebook and Instagram.

*Id.* at ¶¶ 18-20.

Plaintiffs allege that because of the yearbook story, photographs, interviews, and ensuing gossip, C.C. stopped eating and "went into a psychic and physical tailspin." *Id.* at ¶ 25. Plaintiffs allege that C.C. lost 43 pounds between October 24, 2018 and January 30, 2019, dropping to a weight of 119 pounds.[2] Due to her significant weight loss, on January 30, 2019, C.C.'s parents admitted her to an inpatient eating disorder treatment program in Tulsa, Oklahoma. When C.C. was admitted to the treatment facility, she reported to staff at the facility that "she started obsessing with her body after the yearbook interview and photographs." *Id.* at ¶ 26. During the next several months, C.C. made some progress, but also struggled in the treatment program. On April 25, 2019, C.C. was discharged from the facility because her parents could no longer afford to pay for the costly treatment.[3] In late April 2019, C.C. returned to McNeil High School, where she "was subjected to a hostile environment." *Id.* at ¶ 42. Plaintiffs aver that the hostile environment "stemmed from gossip and rumors" that Proctor had been terminated because C.C.'s family was "suing the school." *Id.*

On December 2, 2019, Plaintiffs filed this lawsuit against RRISD, Proctor, and Grubbs ("Defendants"), alleging claims under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and the Fourteenth Amendment's equal protection and due process clauses "pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 1983)." Dkt. 4 at ¶ 1. On March 25, 2020, the Court granted Defendant Proctor's Motion to

---

[2] C.C. is five feet ten inches tall.

[3] C.C.'s parents spent $162,033.93 on C.C.'s medical expenses between January and April 2019. Exh. A to Dkt. 4 at 21.

3

Dismiss and dismissed Proctor from this lawsuit, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 22.

In its Motion to Dismiss under Rule 12(b)(6), RRISD argues that all of Plaintiffs' claims should be dismissed for failure to state a claim for which relief can be granted. Plaintiffs oppose the Motion to Dismiss in part. On June 23, 2020, the Court granted Plaintiffs leave to file an Amended Complaint adding an invasion of privacy claim under 42 U.S.C. § 1983 against Defendants RRISD and Grubbs. On July 8, 2020, RRISD filed a Supplemental Motion to Dismiss, arguing that Plaintiffs' invasion of privacy claim also fails to state a claim for relief.

## II.     Plaintiffs' Opposed Third Motion for Leave to Amend

Plaintiffs filed their First Amended Complaint on December 2, 2019. Dkt. 4. On June 23, 2020, the Court granted Plaintiffs leave to file their Second Amended Complaint. Dkt. 35. The Scheduling Order in this case required the parties to "file all motions to amend or supplement pleadings or to join additional parties by July 16, 2020." Dkt. 26 at 1. On September 3, 2020, Plaintiffs filed the instant Motion for Leave, seeking to amend their complaint for the third time to add claims under Title IX of the Educational Act of 1972, as well as a claim for failure to train under 42 U.S.C. § 1983. Dkt. 46.

A district court may grant leave to amend after the deadline in the scheduling order has passed only "upon a showing of good cause." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting FED. R. CIV. P. 16(b)). Under the good cause standard, the party seeking relief must show "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* (quoting 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). In determining whether a party has shown good cause, courts may consider the following four factors: (1) the explanation

4

for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *SouthTrust Bank*, 315 F.3d at 535. District courts have broad discretion in granting or denying leave to amend. *See id.*

The Court finds that Plaintiffs have failed to present good cause for the amendment because they have failed to show that the deadlines could not reasonably have been met despite their diligence. Plaintiffs fail to address any of the above factors, and notably have failed to provide the Court with any explanation for the delay in seeking leave to amend. Accordingly, Plaintiffs' Motion for Leave (Dkt. 46) is **HEREBY DENIED**.

### III.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).

5

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV.   Analysis

Plaintiffs allege claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA" or "Section 504"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"); the Fourteenth Amendment's equal protection and due process clauses, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983; and invasion of privacy under § 1983. RRISD argues that all of these claims should be dismissed under Rule 12(b)(6).

### A.   Plaintiffs' Title VII and Section 1983 Claims

In their Response, Plaintiffs state that they do not oppose dismissal of their Fourteenth Amendment's equal protection and due process claims asserted under Title VII and § 1983. *See* Dkt. 30 at 2. Similarly, Plaintiffs' Supplemental Response notifies the Court that they have abandoned their newly asserted invasion of privacy claim under §1983. Dkt. 42 at 1. Accordingly, RRISD's Motion to Dismiss Plaintiffs' claims under Title VII and § 1983 is **GRANTED**.

### B.   Plaintiffs' Section 504 and ADA Claims

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. Courts apply the same analysis to claims under Section 504 and Title II of the ADA. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) ("The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."); *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (stating that the language in the ADA generally tracks the language in the RA, and jurisprudence interpreting either section is applicable to both).

Plaintiffs allege that RRISD intentionally discriminated against C.C. because of her disability, Anorexia Nervosa. In order to show a violation of either the RA or ADA, a plaintiff must allege that (1) she has a qualifying disability; (2) she is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of her disability. *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017). A plaintiff can recover monetary damages under either statute only if she also proves that the discrimination was intentional. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020); *Delano-Pyle*, 302 F.3d at 574 ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination.").

In *Delano-Pyle*, the Fifth Circuit held that "when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA, the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA." 302 F.3d at 574-75. Thus, a plaintiff asserting a violation of the ADA or RA—in contrast to § 1983—is not required to show that the discrimination was a result of a municipal policy or custom, or that a policymaker was the "moving force" behind the violation. *Id.* at 575 (concluding that "neither a policymaker, nor an official policy must be identified for claims asserted under the ADA or the RA"). The

*Delano-Pyle* Court also stated that "[t]here is no 'deliberate indifference' standard applicable to public entities for purposes of the ADA or the RA." *Id.* Instead, a plaintiff must show intentional discrimination to recover damages under the ADA or the RA.

Although intent is a necessary element of a damages claim under the ADA and the RA, the Fifth Circuit "has hesitated to 'delineate the precise contours' of the standard for showing intentionality. But the cases to have touched on the issue require something more than 'deliberate indifference,' despite most other circuits defining the requirement as equivalent to deliberate indifference." *Cadena*, 946 F.3d at 724 (quoting *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018)). In practice, the Fifth Circuit has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt. *Delano-Pyle*, 302 F.3d at 575-76. The court also has found that a plaintiff created a genuine dispute as to intentional discrimination when the evidence indicated that, "on several occasions, an interpreter was requested but not provided," and one of the forms of communication that a hospital used to speak with a hearing-impaired patient was often ineffective. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015); *see also Cardena*, 946 F.3d at 724 (finding that plaintiff created a fact issue with regard to intentional discrimination where prison refused to provide disabled inmate a wheelchair).

In the context of the IDEA, the Fifth Circuit has held that "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010).

With this background in mind, the Court turns to Plaintiffs' allegations in this case. In support of their argument that RRISD intentionally discriminated against C.C. because of her disability, Plaintiffs allege that Proctor knew that C.C. had Anorexia Nervosa and "recruited" C.C. into the journalism department so that she could "exploit the student's life-threatening disability." Dkt. 30 at 8. Plaintiffs further allege that Proctor carefully crafted a plan to exploit C.C.'s disability by making it the subject of a feature article in the high school yearbook concerning mental illness, instructing older students to interview C.C. about her private health issues and take photographs of her. Plaintiffs further allege that Proctor did not ask for C.C.'s parents' permission to feature her in the yearbook, turning "a blind eye to the extreme risk and actual harm to which she exposed a vulnerable child entrusted to her care by her parents under our state's compulsory school attendance laws." *Id.* at 6. RRISD argues that Plaintiffs' allegations support only a common law negligence claim and do not rise to the level of intentional discrimination.

The Court finds that Plaintiffs' allegations are sufficient to create "an inference of professional bad faith or gross misjudgment" on Proctor's part and state a plausible claim of intentional discrimination under the RA and ADA. *D.A. ex rel. Latasha A.*, 629 F.3d at 455; *see also Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 223 n.9 (5th Cir. 2018) (finding that medical school student adequately alleged college intentionally discriminated against him where college knew about student's health and psychiatric issues and dean of admissions stated that plaintiff was rejected for readmission because he was "a liability for psychiatric reasons"); *Casas v. City of El Paso*, 502 F. Supp. 2d 542 (W.D. Tex. 2007) (finding that fact issue existed as to whether city bus driver intentionally discriminated against disabled bus passenger under the ADA when bus driver required passenger's personal care attendant to pay fares even though the driver was told about plaintiff's privileges). As the Fifth Circuit has stated: "Intent is usually shown only by

9

inferences. Inferences are for a fact-finder and we are not that." *Perez*, 624 F. App'x at 184. RRISD's own interpretation of the facts is not sufficient to defeat Plaintiffs' claims under the RA and ADA at the motion to dismiss stage.

Relying on *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 622 (S.D. Tex. 2019), RRISD argues that Fifth Circuit jurisprudence requires a plaintiff to show that the defendant acted out of "prejudice, ill-will, or spite" against the plaintiff. Dkt. 32 at 6. However, as noted, the Fifth Circuit has not delineated "the precise contours" of what is required to show intentional discrimination and has not stated that a plaintiff must show prejudice, ill-will, or spite. In *Washington*, the court simply stated that: "The Fifth Circuit has not articulated a clear standard for intentional discrimination under § 504 and Title II in the school context, but courts in this circuit have concluded that 'the plaintiff must link the discrimination claims to some evidence of prejudice, ill-will, or spite,' or, at the least, show deliberate indifference." 403 F. Supp. 3d at 623. The Southern District of Texas went on to find that the "uncontroverted summary judgment evidence" undermined any inference of intentional discrimination in that case. *Id.* Thus, RRISD's reliance on *Washington* is misplaced.

RRISD also argues that Plaintiffs' intentional discrimination claims under the RA and ADA fail because "the District did not have actual notice of the events in question until *after the fact* when C.C.'s parents complained to McNeal High School administrators." Dkt. 32 at 7. RRISD argues that in order to hold RRISD liable under the RA or ADA, RRISD had to have actual notice of Proctor's alleged discrimination for Proctor's actions to be imputed to RRISD. In support of this argument, RRISD relies on the Fifth Circuit's statement in *Miraglia* that "a defendant must have notice of the violation before intent will be imputed." 901 F.3d at 575. In *Miraglia*, the plaintiff, a quadriplegic who used a motorized wheelchair, attempted to visit a historical landmark

10

in the French Quarter of New Orleans, but determined that he could not enter the building because the entrance was too narrow and the ramps leading up to the doors were too steep. Thus, the plaintiff did not attempt to enter the building and did not interact with anyone inside before he left. The plaintiff then filed a disability discrimination lawsuit against the owner of the building, the Board of Supervisors of the Louisiana State Museum, and the Deputy Director of the Museum. The Fifth Circuit held that the plaintiff's intentional discrimination claims under the RA and ADA failed because there was no evidence that the Deputy Assistant Secretary or anyone at the Museum ever had notice of the alleged failure to accommodate the plaintiff. Thus, the court found that the defendants could not have acted with intent if they or any employees were never notified of the alleged violation.

The court did not state, as RRISD argues, that the employer-municipality must have notice of an employee's actions in order to hold the employer-municipality liable. Such a statement would have overruled the Fifth Circuit's holding in *Delano-Pyle* that, under the RA and ADA, "the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA." 302 F.3d at 574-75. *See also PlainsCapital Bank v. Keller Indep. Sch. Dist.*, 746 F. App'x 355, 361 (5th Cir. 2018) (noting that *Delano-Pyle* concluded county was vicariously liable for police officer's actions and "[n]either a policymaker nor an official policy was required; liability could arise from an employee's intentional acts"); *Casas v. City of El Paso*, 502 F. Supp. 2d 542, 552 (W.D. Tex. 2007) (noting that under *Delano-Pyle*, "a public entity is vicariously liable for the discriminatory acts of its agents"). Thus, to hold RRISD liable for Proctor's intentional discrimination under the RA and ADA, only Proctor had to be on notice of C.C.'s disability and intentionally discriminate. If RRISD had to be on notice and the intentional discriminator, there

would be no vicarious liability under either statute. Accordingly, RRISD misconstrues binding Fifth Circuit precedent.

Based on the foregoing, Plaintiffs have alleged a plausible intentional discrimination claim under the ADA and RA.

### C. Defendant Joseph Grubbs

Plaintiffs have failed to serve Defendant Joseph Grubbs. A district court cannot exercise personal jurisdiction over a party without proper service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolf & Co.*, 484 U.S. 97, 104 (1987). Federal Rule of Civil Procedure 4(m) permits dismissal of a suit if a plaintiff fails to serve a defendant within 90 days of the filing of the complaint, but provides that, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Proof of good cause "requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013).

Plaintiffs filed this lawsuit on December 2, 2019. The 90-day period in which to effect service on any unserved defendants has long expired. Under Rule 4(m), this Court may *sua sponte* dismiss an action without prejudice against unserved Defendants or order that service be made within a specified time. FED. R. CIV. P. 4(m). If good cause exists for the failure, the district court must extend the time of service for an appropriate period. *Id.* A plaintiff bears the burden of showing valid service or good cause for failure to effect timely service. *Thrasher*, 709 F.3d at 511. Plaintiffs have demonstrated neither service nor good cause for failing to serve Defendant Grubbs. Accordingly, the Court will dismiss Plaintiffs' claims against Defendant Grubbs without prejudice under Rule 4(m) unless Plaintiffs establish good cause for their failure to serve him.

## V. Conclusion

Based on the foregoing, RRISD's Motion to Dismiss (Dkt. 28) is **GRANTED IN PART AND DENIED IN PART**. The Court **DENIES** the Motion to Dismiss with regard to Plaintiffs' discrimination claims under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, but **GRANTS** the Motion to Dismiss Plaintiffs' claims under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act.

Plaintiffs' Opposed Motion for Leave of Court to File the Third Amended Complaint (Dkt. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs must file a status report explaining their failure to serve Defendant Joseph Grubbs within **14 days** of this Order. Otherwise, Defendant Grubbs will be dismissed under Rule 4(m).

**SIGNED** September 4, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE