# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| S.C. AND B.C., INDIVIDUALLY AND | § | |
| AS NEXT FRIENDS TO C.C., | § | |
| A MINOR CHILD, | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **Case No.  A-19-CV-1177-SH** |
| | § | |
| **ROUND ROCK INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| *Defendant* | § | |

## O R D E R

Before the Court are Defendant Round Rock Independent School District's ("RRISD") Motion for Summary Judgment, filed December 14, 2020 (Dkt. 57); Plaintiff's Response, filed January 5, 2021 (Dkt. 61); and RRISD's Reply, filed January 12, 2021 (Dkt. 62). On March 11, 2020, District Court transferred this case to the undersigned Magistrate Judge for all proceedings and the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 21.

## I.    Background

S.C. and B.C., individually and on behalf of their minor daughter, C.C. (collectively, "Plaintiffs"), filed this disability discrimination lawsuit against RRISD and individual defendants Theresa Proctor and Joe Grubbs. Plaintiffs make the following allegations in their Second Amended Complaint. Exh. A to Dkt 31 ("Complaint").

In 2014, C.C. enrolled as a student at Cedar Valley Middle School in RRISD. The same year, C.C. was diagnosed with and treated for Anorexia Nervosa, "a mental disorder manifested by extreme fear of becoming obese and an aversion to food, usually occurring in young women and

often resulting in life-threatening weight loss, accompanied by a disturbance in body image, hyperactivity, and amenorrhea." STEDMANS MEDICAL DICTIONARY 44880 (West 2014). After RRISD determined that C.C. was entitled to receive certain accommodations for her eating disorder pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, RRISD developed a Section 504 Individual Accommodation Plan for C.C. (the "504 Plan"). The 504 Plan, which was subsequently amended, included, in relevant part, the following accommodations:

> Student will need to eat snacks during the school day (morning).
>
> Student will need to eat meals with supervision, and she may have lunch with any of her available teachers.
>
> When possible notify parents in advance when there will be food in class so adjustments can be made.
>
> ***
>
> Excuse student from any assignment or activity that involves diet, nutrition, fitness, or body image.
>
> Staff will not discuss dieting, body image, or related topics around C. They should discourage these topics and occurrences in the classroom.

Dkt. 31 at 33.

In Fall 2018, C.C. transitioned to McNeil High School. Plaintiffs allege that "the 504 Plan did not follow her in any meaningful fashion." Complaint ¶ 15. Plaintiffs contend that the Assistant Principal of McNeil High School, Joe Grubbs, failed to implement or delegate implementation of the 504 Plan and, "as later events made clear, he had not even read the plan until C.C. was in full crisis." *Id.* Plaintiffs also allege that Theresa Proctor, C.C.'s journalism teacher and a member of C.C.'s Section 504 Committee who was aware of the above accommodations, "recruited C.C. into the journalism department" because she "had a plan to exploit C.C.'s health condition." *Id.* ¶¶ 17-18. Specifically, Plaintiffs allege that Proctor:

> intended to make C.C. the subject of a feature article in the high
> school yearbook concerning mental illness. She assigned upper class
> students to interview and photograph [C.C.] with a view to
> developing the article.
>
> As a 16-year old child, C.C. was legally incapable of giving consent
> to the interviews and photographs. Neither of her parents were
> contacted by any school official or faculty member to gain consent.
>
> Submitting to the peer and faculty pressure, C.C. participated in the
> interviews and allowed photographs to be taken in late October or
> early November 2018. Not surprisingly, the photographs and
> gossipy rumors of [C.C.]'s condition soon began appearing on
> internet social media such as Facebook and Instagram.

*Id.* ¶¶ 18-20.

Plaintiffs allege that because of the yearbook story, photographs, interviews, and ensuing

gossip, C.C. stopped eating and "went into a psychic and physical tailspin." *Id.* ¶ 25. Plaintiffs

allege that C.C. lost 43 pounds between October 24, 2018 and January 30, 2019, dropping to a

weight of 119 pounds.[1] Due to her significant weight loss, on January 30, 2019, C.C.'s parents

admitted her to an inpatient eating disorder treatment program in Tulsa, Oklahoma. When C.C.

was admitted to the treatment facility, she reported to staff at the facility that "she started obsessing

with her body after the yearbook interview and photographs." *Id.* ¶ 26. During the next several

months, C.C. made some progress, but also struggled in the treatment program. On April 25, 2019,

C.C. was discharged from the facility because her parents could no longer afford to pay for the

costly treatment. In late April 2019, C.C. returned to McNeil High School, where she "was

subjected to a hostile environment." *Id.* ¶ 42. Plaintiffs aver that the hostile environment "stemmed

from gossip and rumors" that Proctor had been terminated because C.C.'s family was "suing the

school." *Id.*

---

[1] C.C. is five feet ten inches tall.

On December 2, 2019, Plaintiffs filed this case against RRISD, Proctor, and Grubbs ("Defendants"), alleging claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA" or "Section 504"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"); and the Fourteenth Amendment's equal protection and due process clauses, "pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 1983)." Dkt. 4 ¶ 1. Plaintiffs later amended their complaint to add an invasion of privacy claim under § 1983.

The Court dismissed Proctor under Rule 12(b)(6) on March 25, 2020, and dismissed Grubbs under Rule 4(m) on September 22, 2020. Dkts. 22, 53. On September 4, 2020, the Court granted RRISD's Motion to Dismiss Plaintiffs' Title VII and § 1983 claims against RRISD, but denied the Motion as to Plaintiffs' discrimination claims under the RA and ADA. RRISD now moves for summary judgment, arguing that Plaintiffs have failed to come forward with sufficient evidence to support their Section 504 and ADA claims.

## II.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Id.*

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 255.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Analysis

RRISD argues that it is entitled to summary judgment on Plaintiffs' claims under the RA and the ADA because Plaintiffs have failed to come forward with competent summary judgment evidence of intentional discrimination.

#### A.  Section 504 and the ADA

As noted, Plaintiffs allege that RRISD intentionally discriminated against C.C. because of her disability, Anorexia Nervosa, in violation of Section 504 of the RA and Title II of the ADA.

Section 504 mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, the Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Courts apply the same analysis to claims under Section 504 and Title II of the ADA. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) ("The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."); *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (stating that the language in the ADA generally tracks the language in the RA, and jurisprudence interpreting either section is applicable to both).

In order to show a violation of either statute on a theory of disability-based intentional discrimination, a plaintiff must allege that (1) she has a qualifying disability; (2) she is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of her disability. *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017). Moreover, to recover compensatory damages under Section 504 or the ADA, a plaintiff also must prove that the discrimination was intentional. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020). The Fifth Circuit has hesitated to "delineate the precise contours" of the standard for showing intentionality, but has stated that "intent requires that the defendant at least have actual notice of a violation." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018). In the school setting, "[i]ntentional-discrimination liability requires proof that the

school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Columbia-Brazoria*, 855 F.3d at 690.

### B. Evidence

In support of their argument that RRISD intentionally discriminated against C.C. because of her disability, Plaintiffs allege that Proctor (1) knew that C.C. had Anorexia Nervosa; (2) was fully aware of the 504 Plan and C.C.'s required accommodations; and (3) failed to follow the 504 Plan by discussing her eating disorder with C.C. and by encouraging C.C. to be the subject of a feature article on eating disorders in the high school yearbook. Complaint ¶¶ 16-21; Dkt. 61 at 12. RRISD argues that Plaintiffs have failed to come forward with competent summary judgment evidence to support these allegations. RRISD points out that although Plaintiffs state in their Response that their summary judgment evidence includes declarations from C.C. and C.S., C.C.'s 504 Plans, and Plaintiffs' complaint to the United States Department of Education, Plaintiffs did not file any of those exhibits with the Court. *See* Dkt. 61 at 3.

RRISD is correct that Plaintiffs did not submit any competent evidence with their Response.[2] Nonetheless, RRISD's own summary judgment evidence demonstrates that there is a fact issue as to whether Proctor intentionally discriminated against C.C. because of her disability. Specifically, RRISD submitted Proctor's sworn affidavit. Proctor Aff., Exh. 1 to Dkt. 57. In the affidavit, Proctor states that:

---

[2] Plaintiffs rely only on conclusory allegations in their pleadings and unsworn interrogatory answers alleging that Proctor intentionally discriminated against C.C. because of her disability. Conclusory allegations and unsworn interrogatory answers are not competent summary judgment evidence. *See Turner*, 476 F.3d at 345 ("Conclusory statements are not competent evidence to defeat summary judgment."); *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.").

1. She became aware that C.C. had Anorexia Nervosa at C.C.'s Section 504 Committee meeting in January 2018, before C.C. was interviewed for the school yearbook story on eating disorders. *Id.* ¶ 17.

2. She became aware of C.C.'s accommodations at that meeting, including that "we were not to discuss dieting, body image or related  topics in [C.C.'s] presence." *Id.* ¶ 20.

3. After the student editors asked her if she knew anyone with an eating disorder, Proctor approached C.C. and asked her if she wanted to be interviewed and photographed for the story. *Id.* ¶ 45.

4. She did not ask C.C.'s parents for permission to interview and photograph C.C. *Id.* ¶ 59.

Proctor's affidavit demonstrates that she (1) was aware of C.C.'s disability and the accommodations requiring C.C. to be excused from any assignment or activity involving diet, nutrition, fitness, or body image, and to discourage any discussion of such issues, and that Proctor would not discuss those issues with C.C.; and (2) nevertheless asked C.C. if she was willing to be interviewed and photographed for a story about eating disorders in the school yearbook.

The Court finds that this evidence creates a fact issue as to whether Proctor intentionally discriminated against C.C. because of her disability by knowingly denying C.C. accommodations. *See Cadena*, 946 F.3d at 725 (finding fact issue precluding summary judgment on detainee's intentional discrimination claim against county jail where detainee was using a wheelchair when arrested and jail staff later refused to provide requested accommodations); *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185-86 (5th Cir. 2015) (finding fact issue whether hospital intentionally discriminated against hearing-impaired parents for failing to provide them with an interpreter where evidence showed hospital staff knew plaintiffs were disabled, plaintiffs made repeated requests for interpreter, and hospital refused to provide one); *Est. of Esquivel v. Brownsville Indep. Sch. Dist.*, No. 1:16-CV-0040, 2018 WL 10150656, at *5 (S.D. Tex. Sept. 11, 2018) (finding that parents of disabled swimmer who drowned in school-run pool created fact issue as to intentional discrimination where evidence showed defendant failed to follow any

accommodations prescribed by victim's physician); *Casas v. City of El Paso*, 502 F. Supp. 2d 542, 553 (W.D. Tex. 2007) (finding that fact issue existed as to whether city bus driver intentionally discriminated against disabled bus passenger under the ADA when driver required passenger to pay fares although driver knew plaintiff was disabled and qualified for free ride program).[3]

### IV.    Conclusion

Because there is a genuine dispute of material fact as to whether RRISD intentionally discriminated against C.C., in violation of the ADA and RA, RRISD's Motion for Summary Judgment (Dkt. 57) is **DENIED**.

**SIGNED** January 19, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

---

[3] *See also Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 223 n.9 (5th Cir. 2018) (finding that medical school student adequately alleged college intentionally discriminated against him because of his disability in violation of the RA where college knew about student's mental limitations and that those limitations impaired his ability to sit for a medical licensing exam, but nevertheless dismissed him from medical school because he failed to take the exam).